arguments not to exceed 15 minutes per side. Mr. Eckes, for the appellant, you may proceed. Good afternoon, Your Honors. May it please the Court, I've reserved two minutes for rebuttal. Very well. Your Honors, the Fourth Amendment protections do not rise and fall with the C.A.T.S. formulation. This is a situation where both are at play. There's been a lot of litigation, there's been other cases. The Fifth Circuit has analyzed one of the main issues in this case under the C.A.T.S. formulation. Both being C.A.T.S. and trespass, is that what you're getting? C.A.T.S. versus trespass, yes. And I'd like to start with the trespass, Your Honor. The trespass test, we have three things to look at. Was there a physical intrusion on constitutionally protected space to obtain information? And I argue that the plain words of that is clear here. What we have, I mean ultimately the key here to that, we all know that and everyone agrees that's what the trespass test is. The key here is that data is a modern-day personal paper or effect. And that key unlocks a lot of what's going to happen, I predict, in the future with data privacy cases and the trespass doctrine. You have a property right in your data. And in this case, that data was covered up, it was enveloped in a file. So a file system is a modern-day container for data. Now data can be multiple things. And there may be days where we get to complicated things about data as to whether that data is actually yours. Because the primary question of the trespass doctrine is, was it yours? And I don't think we have that much complication for data in this context. This data is like anything else. It is your email attachments and your emails are your data. Your data can contain pictures, it can contain documents, PDFs, anything. But that data is covered by a container. So the question is, was that container physically trespassed upon? Now there's complicated answers to that. I cited to a law review article from someone, you've got mail that knows far more about computers than I do. But the intuition is pretty clear that if you are going to open a file, you are going to physically trespass to retrieve the data. Now ultimately the analogy made in that article is like a fence. A file is like a fence around real property. That's clearly an analogy. But the data is in there. You go over or remove that fence. Now you have accessed that data. But who's committing the trespass under this scenario? Isn't it Google with their search, their hashtag search that does the match? Because that's equivalent, essentially equivalent to actually looking at the file because of the reliability of the hash value. I would say that Google does do a search and does do a trespass. But the, to the actual file with the hash value technology. But ultimately the fact they did that is irrelevant to a trespass test doctrine. Trespass test down the line of when the government. What if, so you want to basically switch the framework from cats to trespass. But doesn't, we can't switch halfway. So the question would be if at the time of the founding a private party trespassed on property and stole some mail or something. And then handed the mail over to the government, basically open letters essentially. Would the government be committing a trespass just by simply reading the letters? Or that's the first question. And second, it's not intuitive even if that would qualify as a search or seizure. The question would be whether it's reasonable as well within the meaning of the Fourth Amendment. And so wouldn't we have to look to, I mean you want to switch to this trespass notion. Wouldn't we have to look to the original understanding for those questions too? Yes. And the formulation that the government can redo a search is a limitation on cats. Because what it's a limitation on is the part of the cats test which is you have a reasonable expectation of privacy that's frustrated. Ultimately upon frustration extinguished. You don't have that reasonable expectation of privacy anymore. The open letter question, I submit that this is different because this is a closed container still. And a file can be opened and it can be closed back up. This file was never opened by Google. Assume for a second that we think that the hash value is analogous to opening it. And that there's no difference between doing the hash value that shows, because it's so accurate, that shows that it is the picture that Google says it is and the actual opening of it. So maybe change the hypothetical a little bit. What if Google just opened it and then said, oh, yes, this is child pornography without using hash and then sent it along? Would the fact that the government looked at the open file raise a Fourth Amendment question either under search or under reasonable? I think it would still be problematic under the trespass test. Because I think the reasonableness inquiry, while there's this word reasonableness in the cats formulation, there's also reasonableness overall touched on in the Fourth Amendment. But that reasonableness has been said to be per se unreasonable if you don't have a warrant unless you have one of the warrant exceptions. Particularly when you could have gotten one really easily based on what you already had. Exactly. That is the key to this case. It is one of the keys to this case. And it's one of the things that is hard is my argument often, you know, the sky is falling often happens when you make a trespass test argument. And it's not the sky is falling because this is the proper way to handle emerging technologies would be explain it to the detached neutral magistrate or judge, have them review it, see that this causes probable cause, get a warrant, open up the email attachment. But don't you think that the per se rule developed along with the other? Has the per se rule been around since cats? I mean, maybe cats, the per se rule developed because there was already this reasonableness baked into cats. And so once we get rid of cats, do we have to ask maybe a jettison of what a search is also requires a jettison of what reasonable means. As Justice Gorsuch recently said in the Carpenter dissent, a lot of jurisprudence is needed in this type of issue. But I would say that no, that what we have right now is there are exceptions to the warrant requirement. We know what those are. They're well delineated. It's consent. It's actions and circumstances. Those all still will always apply to the trespass doctrine because they're exceptions to the warrant requirement. But the private search doctrine is not an exception to the warrant requirement. The private search doctrine develops similar to the third-party doctrine as a limitation on cats. It's not a search. Right. It's to say it's not a search. But trespass says, oh, no, this was a search because you physically trespassed on constitutionally protected space, that being a paper person or effect, that being the data in this case, that being the chattel. On that point, then-Judge Gorsuch says there could hardly be a more obvious analogy than the extension of common law trespass to this sort of virtual sort of letters and so on. I'm not good with IT, so I'm sorry. Our expert is here, though, thankfully. That said, I mean, what is the legal authority for saying, okay, this is true. It's kind of all virtual, but we are going to treat it like a physical trespass. I mean, are you asking us to be that authority? Apart from the Law Review article, is there authority that you would point us to for that premise? There's the federal statute that I cited in the brief about the developing property interest in your e-mails and your e-mail attachments. Again, Warshak is going to be more of the cat's test, that type of stuff. But I think that lends to the idea that this intuitive nature that e-mail has replaced mail in our society. And if that is the case, then it's intuitive that we treat it the same. Now, it's treated as a bailment. It's a bailment where you've turned it over to the third party to deliver it. But you still retain your property rights and stuff that is a bailment. And that's what I would argue happens here. But the authority would be us, it sounds like. We would have to break that ground and say, okay, for these very good reasons, we are going to treat this not just as some virtual trespass but as a physical trespass for purposes of Jones, et cetera. I think the answer is, for the most part, yes. But there is still some – I believe that the tide is – well, I mean, the Cornell case that I cited, the Sarah Palin e-mail hack where the government charges her hacker with a violation of her property, they didn't destroy it. What they did is the dignitary interest of the property. And the district court in that case found that it is clearly she – Governor Palin had a property interest in her e-mails. That's how the government was able to charge her with wire fraud for affecting that property interest. So I think that the idea that – But trespass is about physical property, isn't it, not just sort of intangible property? Well, if you've got a personal paper effect – I mean, I wrote some notes today. If these notes – I typed them first and they're in a file, certainly this piece of paper is a personal paper effect. If it is then put into a file and put on my computer, I don't – I think the modern technology makes it slightly different, but at the same time I think it is, in fact, the same thing that the government is doing. Now, my equivalent isn't just the piece of paper. It's the piece of paper in an envelope is what I say a file is. And that's what is trespassed upon is the chattel. Has – so Jones applies in the context of putting a GPS system on a car. Have any courts of appeals said that Jones's property-based analysis applies in different contexts? I know Judge Gorsuch suggested in the alternative that it should apply in this context, but I'm curious if there's any holdings from the courts of appeals that have extended Jones's property-focused approach to other areas other than a GPS physical trespass. Yes, I mean, there has been. I don't want to cite the cases that weren't in my brief. I mean, the Sixth Circuit has held in a chalking case, I believe, on a car. But the reality is that, yes, it has. That was physical, though. It wasn't – and we didn't hold. I was on that panel. We did not hold it was a search. We just said these exceptions don't apply. So – The reason I'm asking the question is this is a pretty significant would-be, a pretty significant intrusion into the traditional way of thinking about it in terms of Jacobson. And the question is do we even have authority to do that, or should we be pointing this potential inconsistency between Jacobson and Jones out to the Supreme Court but then follow Jacobson under the principle that it's our duty to follow the case that's directly on point, even if another line of authority suggests that the Supreme Court is now seeing things differently. I would say then-Judge Gorsuch did exactly that in the Tenth Circuit. And furthermore, Jones does change the calculation of Jacobson. I agree. But Jacobson still has its own issues with it. That was a little different, though, right? It was an argument in the alternative because even under the Jacobson test, the Tenth Circuit said it failed because you looked at more than just the image. Here you're asking us to say something that it seems to me there's pretty good arguments by the government that Jacobson should apply fully. And so the question is even if Jacobson would apply, could we still find a violation based on Jones? So that's different than what the Tenth Circuit did. Agreed. And I would say, yes, this Court certainly has that power through the Jones case law. The main thing about Jones case law is this is a plain, we read plain words. We look to what the founders would have thought about mail and opening up mail. And if you look to the founders in its plain physical trespass to constitutionally protected space, papers, and effects, you have now searched it. Where's the warrant requirement? Where's the warrant exception? There isn't a warrant exception in this case. Thank you. Very good. You'll have your rebuttal here from the government. Good afternoon, Your Honors. I'm Elaine Lenhardt, and I represent the United States in this case. The Court asked Mr. Eckes what the authority is for his position, and for the government's position, the authority is Jacobson, and the authority of this Court, which is Lichtenberger. The government's position is that the private search doctrine controls in this case, and Detective Shields' visual-looking inspection of the images, the two files that were attached to the email that generated the cyber tip, went no further than that private search, and as a result, there is no Fourth Amendment violation. Well, I mean, that seems fairly straightforward under the CATS theory, but how about a trespass theory? I mean, why? Jacobson, by its terms, is about privacy and the fact that the person there had already lost his privacy interest in the exposed powder. If we analyze this under a trespass theory, that reasoning is not opposite, it would seem. It is not, but it's also inconsistent with what this Court has held in Lichtenberger, which is probably the closest analog to this case. Was Lichtenberger a trespass case? No, but Lichtenberger was a case much like this, where the Court analyzed the issue in terms of the private search doctrine, and the test was as long as the government essentially stood to gain no additional information and was virtually certain of what it was going to find, what it was going to see. Is that the one with the pictures? Can you give me the facts? I forget. I don't remember this case. Lichtenberger was the girlfriend who, without the defendant's consent, perused some files on her boyfriend's computer and observed child pornography, alerted law enforcement of that fact, and when law enforcement came back, the proof was that the girlfriend and the law enforcement could not establish that what law enforcement saw was exactly what the girlfriend had seen. In Lichtenberger, this Court held that the private search doctrine essentially insulates a subsequent search by law enforcement as long as law enforcement did not exceed the scope of the search. That's a straightforward application of Jacobson. Let's say that the defendant there did not make a Jones argument and therefore the Court did not reach the Jones issue, i.e., Lichtenberger doesn't answer the argument that is being made now and is not controlling on that. What would you have to say then about why this was not a trespass amounting to a search? If there was any trespass in this case, it was done by Google. Yes, but I think their contention is Jacobson does not apply to a trespass theory. If a person loses their privacy interest in the e-mail, if Google already knows what's in there is your argument. I totally understand that. But let's say the defendant lives in a house with a high metal fence and a neighbor climbs over that fence, sneaks up onto the back porch, looks in a window and sees a bunch of cocaine sitting out, and then they call the police. For whatever reason, an officer, rather than get a warrant, chooses to do the exact same thing, climb over the fence, peer in the window and see it, and then they say, okay, well, I see the cocaine, and then they get a warrant. I mean, the first trespass doesn't make lawful the second one, right? It does not, but in this case I think the facts are more complicated given that we're talking about digital media attachments to e-mails, not contents of e-mails, and an e-mail service provider that the defendant voluntarily used to convey the information. So the initial trespass would be done by Google. It doesn't mean it insulates any additional search that Detective Shiel or law enforcement did in this case, but I think the analogies are in opposite because in this case Detective Shiel did nothing. The government's position is that if there was a trespass, that the territory was already charted by Google before it, and Detective Shiel went no further. And so that is the government's position if this court finds that Lichtenberger doesn't control, but the government's position is that Lichtenberger does control. And in this case, given not just the entire process that Google went through in this case, the hash-matching technology that was preceded by a Google employee actually viewing the images, having the file hashed, and adding it to the repository, but also the other additional information that was contained in the NCMEC Cyber Tip-Line Report gave Detective Shiel the virtual certainty that this court and the law requires to insulate his search under the private search doctrine. He knew that the files had been previously hashed and identified as child pornography. The Cyber Tip-Line Report contained the file names, which in this case were explicit. And most importantly, and what makes this case different from Ackerman, this is the question that Ackerman left unresolved. It's this case, and in this case, unlike Ackerman, there were no contents of the email that generated the cyber tip that was transmitted, simply just the attachments. That's why I think you have a really good argument under Jacobson, but it's still getting back to the point that how does – Jones seems to suggest that there is a property rights floor to the meaning of the Fourth Amendment, and then Katz can expand the protections that the Fourth Amendment provides. But cannot reduce the protections that the Fourth Amendment provides. So that suggests that we do have to, in some respects, look at this in the way that Jones looked at it, and it's not clear to me that Jacobson should apply because it literally was about whether there was a reasonable expectation of privacy, and said there isn't a reasonable expectation of privacy when it's a private party, when it's within the scope of the private party's search. So that doesn't – how would that analysis map on to a property-based analysis? In this case, the government contends that the result would be the same because unlike the cases like Jones and the other property-based rights, we have in this case property that was transmitted via a third party by the defendant's voluntary consent. So it's the government – Just put a letter in the mail, but the government can't rifle through it. But as the government argued before the magistrate in this case, it wasn't the prevailing reason why the magistrate ruled the way she did and why the district court adopted it, but we did argue before the magistrate that given the defendant choosing to use an email service provider in this case, or any ISP, to transmit communications, there are terms of service, and that there is some level of forfeiting that expectation of privacy when you're doing so. I don't really track that. I mean, why isn't it just a bailment? Just like putting a Fed – let's get the government out of it. I send something, an envelope by FedEx, and just because I've handed it over to FedEx in the manner that an email user sends stuff through their provider, just because I hand it over to FedEx doesn't mean the government can then open it up and it's not a trespass. I'm not sure FedEx would be the right analogy in that there is – in this case, the defendant had to take multiple – Google state actor, is that what you're saying? Absolutely not. Absolutely not. But in this case, the defendant takes affirmative steps to set up an account with Google by subscribing with Google. I'll just tell you, it's very thin. You seem to be pointing towards the terms of service agreement, and I don't see anything in the terms of service agreement that would support the argument you're making now. I was simply bringing it up in that that was a position that the United States argued before the magistrate when we were litigating the initial motion to suppress, that we argued that the defendant's expectation of privacy in the two email attachments was not reasonable. It was not – that was not the prevailing argument that the magistrate based her R&R on. It certainly wasn't the argument that the district court found to be a winning argument at the district court level. You also argued that you thought that this case is resolved by Lichtenberger. Given that in Lichtenberger they found that under the facts of that case the private search doctrine didn't save the government, there was no need to go on and discuss a trespass argument, even were it to have been made in that case. Am I right about that? You are, but in this case – So how does that then resolve how a trespass analysis would apply in this case? It doesn't. Lichtenberger doesn't. I thought you said that we were bound by that. I understand as to the private search doctrine part of it. Correct. And then the other thing that I wondered about, and this is throughout a lot of the briefing, and I don't mean to suggest this is dispositive, but I'm just curious. You have alluded today to there being a difference between the email and the attachment. At least that's what I thought I heard you say. That was one of the distinguishing factors that distinguishes this case from Ackerman. Now here's what I'm trying to figure out why that makes a difference. It's not unusual around here for somebody to send an email that has the actual communication itself. In other words, what we would equate to be the letter. The letter is actually an attachment to an email that just says, here's a letter from Judge So-and-so. So why is the fact that we call it an attachment, why does that make a difference one way or the other? Why don't we analyze it where the email, the equivalent of the letter, and everything that is attached to it is all part of the letter? The classification or the focus on the attachment is not dispositive. You raised it earlier. I'm just wondering what difference do you think it makes? It makes a difference because when you look in the private search doctrine analysis, it's what is controlling in this case. If the subsequent search by law enforcement revealed nothing more than the private search had than the private search doctrine controls, and because Detective Shields' review was limited to the two email attachments, which were hashed and scanned and found to be a match by Google, those two things are equal. There was no expansion of the search. The fact that it's in the form of an attachment doesn't matter. That's correct. And so the emphasis on attachment is not important. The emphasis is on that the two things that were searched, searched by Google via the proprietary software and the things searched by Detective Shields by putting his eyes on them, those two things were the same. In this case, they were the email attachments and nothing more. If a private party, mail is nothing new like regular mail. If a private party just opened up mail, found incriminating evidence, and then took it to the government, would the government actually just reviewing that be considered a search or a trespass or anything of that sort? I would think not, but the briefing really is totally unclear. Because that's the analysis that it seems to me that would be applicable if we're doing a property rights-based approach. I mean, people bringing incriminating evidence to the government can't be something that's new. I mean, it's new now with technology because they can do these types of things. But I suspect that people may have engaged and private parties may have engaged in searches at the time of the founding and delivered incriminating evidence to the government. And then the question would be, how would that be treated as a matter of property rights? Presumably they would have some type of tort or property or conversion action against the private party, but would it extend to the government? The government's position would be that the Fourth Amendment would not be implicated. So we would agree with the court that that would not be considered a search. I can't off the top of my head think of an example where you would open a letter and there would be incriminating evidence other than – I'm not sure how – I can't think of an example just off the top of my head where there were words absent a confession. There was a package, a stolen item in a package. Well, we would agree that, again, it would not implicate the Fourth Amendment. That would be it. And would it be because you wouldn't view the government's taking possession of the stolen property as a search, or would it just be that when a private party delivers incriminating stuff to the government, it's reasonable for the government to respond to what the private party is doing? In this case, our position is that what the government did in this case did not constitute an additional search. A separate – or excuse me, more expansive than what Google did, the search that Google did in this case. That would be the government's position. Your Honor, in addition, the United States has indicated in our briefing we believe that the defendant's conviction and sentence should be upheld because the evidence was sufficient to support the jury's finding and that there was no error in the admission of the nickel. Can I ask, just switching topics briefly about the confrontation clause, there seems to be a dispute of fact about what the geolocation data in the report, whether it was manually inputted by an analyst or whether it was automated. And if it's manually inputted by an analyst, I would think that that is testimonial in a way that it perhaps wouldn't be if it was automated. But what's the record actually say on that? Both parties are saying different things. Your Honor, the record supports that the information about the geolocation of the IP address was automated. There was an exhibit. The NCMEC report itself, on its face in Section B, indicates that the information in that section was automated. And then the additional testimony by Lindsay Olsen with NCMEC supports that, that all the information in Sections A and B are automated, A, automated by the ESP or the ISP, B, by NCMEC. So you don't have to go to the manual implementation of the – I think the opening brief suggested that he himself did the inputting of the geolocation data to figure out where it was. I believe that is correct. But the information that is in the report that the defendant objects to is found in Section B of the NCMEC report. And at the top of that page – What about the other stuff? Would you think that – I don't think the defendant is really challenging the other types of searches, just online searches that an analyst did. Or would you think that those online analyst searches would be testimonial? It seems to me that the entire point of this report is to find incriminating evidence against the individual for purposes of down the road looking at a trial. I think that the information – Section C in the NCMEC report is where the analyst sort of puts his or her hands on the report and starts doing public search queries via open source records and those sorts of things. I think if there is any part of the report that could be testimonial, and it's not the part that the defendant is objecting to in this case, it could be in Section C. But even then, even if the information in that report is considered testimonial, Crawford only applies to testimonial hearsay. And frankly, the information in C is open source information, information about the defendant on dating websites, things of that nature. The government's position would be there really aren't any statements in those sections as well. There's no analysis of the data, and more importantly, any conclusions reached as a result. Your Honors, I see that I'm out of time. Just one quick question. The email in question here that had the attachments that the detective opened, was that one that the defendant had sent to somebody else? It was. Okay. It was an email that was transmitted to somebody else. It generated the CyberTIP line report, and that email and all the other contents of the Gmail account were then obtained via a search warrant to Google and admitted without objection at trial. Thank you. Could I ask you about that? That's not my understanding. I thought from reading this from the CyberTIP report that the hashing was done at the time that the images were uploaded, and what both Google and the National Center have said is there isn't any indication whether that email itself was then sent or not sent. The face of the CyberTIP line reports does so indicate. So indicate which? That neither Google nor NCMEC could say whether the email was sent. But we on the record know that it was because Detective Scheel subsequently obtained a search warrant for the contents of the Gmail account, so we do know that it was sent. So that's other evidence than the CyberTIP report. All right. Thank you. Thank you. Thank you. Mr. X? Let me ask you a question. A lot of times you don't get to say what you want when you come up for rebuttal. If somebody sends a physical hard copy letter, I send a letter to Judge McKeague, and he then posts it online or something, is that a violation of my property rights in any way? If the intended recipient posts it online? You know, you send a letter to somebody and they share it with other people or they publish it in some manner. Have the property rights of the sender been violated in any way? I'm not sure they have because the intended recipient did that. I mean, I guess what I'm driving at is isn't the letter at that point the property of the recipient? And if that is true, and if it's true that the email in this case was sent, and we're going to do this sort of by analogy application of trespass law, why wouldn't it be the case that Mr. Miller no longer had a property interest in the email and its attachments once he sent it to whomever he sent it to? Because the trespasser in this case is not the person he sent it to. The trespasser in this case is the government, Google as well, but the government. This file was taken as it's uploaded. Judge McKeague is right. As it uploads it, hash value kicks in, hash value takes it, shuts down the account immediately. Now, whether that email through other evidence made its way to Larry Ward or whoever it was, I believe that is in the record. I believe Ms. Lenhart is right about that. I seem to recall that. But the trespasser is then, I mean, trespass doctrine, yes. Is it yours? I mean, Matt, do you have a property right and what's yours? And from Ex Parte Jackson, 1878, your mail, as it's in process, sealed envelopes in the mail, it's trespassed the chattels to get in there before it's delivered. And that's what I would analogize this to, is it was taken before. But if Larry Ward went to the police, then I think there's a whole different question that I would have to start thinking hard about. Okay. That's a thoughtful answer. Thank you. And in terms of the, briefly on the Crawford issue, I did want to point out that Melendez-Diaz is the case that I'm citing to most. And Melendez-Diaz has an analyst, and an analyst writes a report. This thing's called a cyber tip line report. It's called a report. It's an analyst report. And did the analyst perhaps, quite frankly, I didn't realize this until their reply brief, that there was any testimony about automation or whatever. But I certainly researched that. If it is automated, I mean, it can't possibly be considered testimonial, can it? It's like the robot comes in and testifies. I think the report is testimonial because what you have is, it's not that the report, if the whole report was automated and no one did anything with the raw data, yes, I agree. But that's not what this is. This is a compilation of things. And just because the analyst used algorithms, essentially is what happened. The analyst used algorithms. Instead of copying and pasting and going into the Internet, the analyst shortcutted that with a machine algorithm. But I would analogize that to a drug test. You're using machines to come to your conclusions. This analyst used machines to come to her conclusions, put it in a report, and then I didn't get to cross-examine her on the way all that works. Where are the conclusions? They seem to just be automated statements. Including in Section 3. The conclusion that is most prejudicial is that the IP addresses resolve back to this latitude and longitude. And then there's a worse conclusion of that when the government stands up and says that's the defendant's house when, in fact, it wasn't, which in my mind is further interpretation of the data by the government on rebuttal when I can't cross-examine it. When I read the Cyberline tip report, you can draw that conclusion from what the report says, but that's a slightly different question than what the report itself says. The report has information about the geolocation, for example, that appear to be automated. Now, the fact that somebody then looks at this report and draws a conclusion from it, that doesn't mean the report has the words of the conclusion in it, which I would think then would be a statement. I think it does have that conclusion in it because it's saying this IP address reaches this longitude and latitude. And the main point is that this report has an author, and I didn't get to cross-examine the author of a pool. Can I just clarify? So in order to get the output, somebody has to actually type in the IP address. And so your point is you want to cross-examine the, hey, did you have like a typo or something on the IP address? Or how often do you make mistakes when you type in the IP address to get the output? More importantly, what the cross would be about, these geolocation techniques are not, they do not zero in. We all know it doesn't zero in because the government knows that because they say it wasn't Bill Miller's house. They give you a general area, and they give you many of them. A geolocation device gives you like ten different options. Now, if a computer picked out one of those options, then that computer was pre-programmed with tunnel vision, and I would want to cross about that. And that analyst would be the one that authored that. Thank you, judges. All right. Thank you both for your arguments. And is it X or Equis? Equis. I'm sorry? Equis. Equis. So neither was the answer. Mr. Equis, you did a really exemplary job representing your client here. You were pointed pursuant to the Criminal Justice Act, and you discharged that in the best tradition. And the government's briefing was excellent as well. A very well briefed and argued case. We'll think about it carefully. Clerk may adjourn court.